UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DUSTIN S. CASHMER, | ) |
| Plaintiff, | ) No. 15 cv 11319 |
| v. | ) Magistrate Judge Susan E. Cox |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Dustin S. Cashmer ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his disability insurance benefits under Title II of the Social Security Act. For the reasons discussed more fully below, the Court remands this matter for further proceedings consistent with this Memorandum Opinion and Order. Plaintiff's Motion for Summary Judgment [dkt. 16] is granted as stated herein. The Commissioner's Motion for Summary Judgment [dkt. 24] is denied.

I. **Background**

a. **Procedural History**

Plaintiff filed an application for disability insurance benefits on June 20, 2012, with an alleged onset date of disability as of December 8, 2003. [Record ("R") 183.] Plaintiff subsequently amended his onset date to June 6, 2012, the protective filing date. [R 14.]

Plaintiff's disability insurance benefits application was denied initially on December 28, 2012, and again at the reconsideration stage on May 15, 2013. [R 118-20.]

Plaintiff timely requested an administrative hearing, which was held on April 22, 2014 before Administrative Law Judge ("ALJ") Lee Lewin. [R 8, 122.] Plaintiff's administrative hearing was a video

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

hearing where Plaintiff appeared in Peru, Illinois, and the ALJ presided over the hearing from Orland Park, Illinois. [R 93.] Plaintiff was represented by counsel, and both a Vocational Expert and a Medical Expert testified during the hearing. [R 8-69.]

   b.   **Claimant's Background**

Prior to the amended onset date (June 6, 2012), Plaintiff underwent a right minimally invasive transforaminal lumbar interbody fusion at L5-S1 on May 2, 2011 with treating neurosurgeon Dr. George DePhillips. [R 96.] Plaintiff initially reported to his pain management doctor, Dr. Udit Patel, a 50% improvement in his symptoms, and that he had residual pain in the left leg in the months following the May 2011 surgery. [*Id.*] In January of 2012, the Plaintiff reported that his leg symptoms were tolerable, but his back pain was much worse, and an MRI revealed disc protrusion and bulging at L4-5 with bilateral foraminal stenosis. [R 97.] Plaintiff received trigger point injections in February 2012. [*Id.*] On March 6, 2012, Dr. DePhillips allowed Plaintiff to return to work three days a week at a sedentary physical demand level. [*Id.*] In April of 2012, Dr. DePhillips noted that the source of the Plaintiff's continuing pain was most likely a result of a failed fusion at L5-S1. [*Id.*] On June 5, 2012, Dr. DePhillips noted that a review of a CT scan of the Plaintiff's lumbar spine was consistent with pseudoarthrosis. [*Id.*] Dr. DePhillips recommended that Plaintiff undergo an anterior lumbar interbody fusion procedure at L5-S1. [*Id.*] On October 22, 2012, Plaintiff underwent the procedure, and subsequent x-rays of the lumbar spine revealed satisfactory postoperative changes at L5-S1. [*Id.*]

On December 31, 2012, Plaintiff returned to Dr. Patel with complaints of low back and right lower extremity pain. [*Id.*] Physical examination revealed pain over the bilateral lumbar paraspinal muscles and spasm of the left and right lumbar paraspinal muscles, but no masses, normal sensory exam, and negative straight leg raising. [*Id.*] The Plaintiff reported some relief of abdominal and lower extremity pain with Neurontin. [*Id.*]

On February 26, 2013, Dr. DePhillips detailed his plan to "most likely release [Plaintiff] to

2

return to work with restrictions at a light physical demand level" in 4 weeks, but also notes that Plaintiff would not be able to function at greater than a light physical demand level for work until there was complete bridging of the trabecular bone union at L5-Sl. [R 400.] Thus, Dr. DePhillips kept Plaintiff off work until his next appointment in 4 weeks. [*Id*.] The ALJ also highlights that Dr. DePhillips's February 26, 2013 treatment note states Plaintiff was being weaned off the use of narcotic pain medications. [R 97.] On March 20, 2013, at Plaintiff's 4-week follow-up appointment with Dr. DePhillips, the doctor's plan was not implemented. [R 397.] The ALJ details the March 20, 2013 treatment note as one where "it was noted that [Plaintiff's] back pain had improved considerably since his surgery" and where Dr. DePhillips noted that since Plaintiff had been released from physical therapy, Plaintiff had met maximum medical improvement from a surgical standpoint.[2] [R 97.] Dr. DePhillips then opined that Plaintiff was permanently and totally disabled and not capable of meaningful work or gainful employment. [*Id*.; R 397.]

On March 18, 2013, Plaintiff requested a discharge from physical therapy and reported "feeling very well." [R 408-09.] On April 2, 2013, Plaintiff underwent a right piriformis injection. [R 98.] On June 18, 2013, Plaintiff reported not wanting to proceed with further surgical intervention, and that he was dealing with his pain through medications. [*Id*.] On October 7, 2013, Dr. Patel noted that the Plaintiff's functional limitations included bending over, twisting, and walking one block. [*Id*.]

During the application process for disability insurance benefits, Plaintiff claimed the following impairments: lumbar radiculopathy, back injury, and sciatica. [R 110.]

c.   **The ALJ's Decision**

On June 13, 2014, the ALJ issued a written decision denying Plaintiff disability benefits. [R 90-104.] At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity since his amended alleged onset date of June 6, 2012. [R 95.] At step two, the ALJ found that Plaintiff had

---

[2]   See fn. 8 regarding the ALJ's interpretation of this March 20, 2013 treatment note.

3

the severe impairments of lumbar spine impairment with radiculopathy and status post fusion surgeries of the lumbar spine. [*Id.*] At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. [*Id.*] The ALJ made this step three determination after considering that clinically abnormal findings were not shown on a consistent basis in the record with respect to Plaintiff's back impairment. [*Id.*]

Before step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[3] to perform light work, with the exclusion of ladders, ropes, or scaffolds, and no more than occasional climbing of ramps or stairs, kneeling, crouching, crawling, stooping, bending, and twisting. [R 95.]

In turning from the claimant's allegations to the medical evidence, the ALJ concluded that the objective findings failed to provide strong support for the Plaintiff's allegations of disabling symptoms and limitations. [R 98.] While the Plaintiff's medical history is significant for a history of problems related to the lumbar spine that were severe enough to require two surgical interventions, the ALJ found it significant that following the second fusion in October 2012, the Plaintiff "eventually recovered enough to no longer require physical therapy or narcotic medication." [*Id.*] The ALJ found that although there were clear physical limitations in Plaintiff's ability to perform work, and although he reached maximum medical improvement as opined by a number of treating sources, Plaintiff had the ability to perform work that would not require as much physical effort as what he had been used to prior to his lumbar spine injury. [*Id.*] The ALJ found that the objective medical evidence did not provide a basis for finding limitations greater limitations than he had noted. [*Id.*]

The ALJ also called into question Plaintiff's credibility on the following bases: despite the severity and the functional limitations Plaintiff alleges, he lives alone in a small house, where he takes care of himself and performs a variety of chores; although Plaintiff alleged that physical therapy did not

---

[3] RFC is defined as the most one can do despite one's impairments. 20 C.F.R. §§ 404.1545, 416.945.

4

help his condition, his March 2013 discharge summary, wherein Plaintiff states he is feeling improved and able to walk for unlimited distances without assistive devices and sit for extended periods of time without discomfort, contradict these statements; the frequency and intensity of Plaintiff's alleged headaches is not reflected in the medical records, and there is no referral to a specialist for treatment, which called Plaintiff's credibility into question for the ALJ.[4] [*Id.*] While the Plaintiff testified that he is in constant pain and experiences little improvement with medications, medical records from both Drs. DePhillips and Patel noted that the Plaintiff reported improvement with medication, including Neurontin. [*Id.*] The ALJ determined that "the fact that the Plaintiff was weaned off narcotic medications suggests that his pain was becoming more tolerable." [*Id.*] The ALJ also queried why Plaintiff did not make attempts to work at a less physically demanding workplace, such as an office environment. [R 98-99.]

In arriving at Plaintiff's RFC, the ALJ gave the "most weight to the medical record overall", which the ALJ found consistent with his residual functional capacity assessment. [R 99.] The ALJ reviewed Dr. DePhillips's February 26, 2013 opinion that the Plaintiff would not be able to function at greater than a light physical demand level for work until there was complete bridging of his L5-S1 bone union. [*Id.*] The ALJ also reviewed Dr. DePhillips's March 20, 2013 opinion that the Plaintiff was permanently and totally disabled and not capable of meaningful work or gainful employment. [*Id.*] Although the ALJ found Dr. DePhillips's February 2013 opinion consistent with his treatment notes, the ALJ noted that his own assessed residual functional capacity was more generous than Dr. DePhillips's; as Dr. DePhillips provided no additional limitations to the light exertional level, the ALJ did not find Dr. DePhillips's opinion that Plaintiff is permanently and totally disabled to be consistent with Dr. DePhillips's own treatment notes, particularly with respect to his notations that Plaintiff's pain

---

[4] Earlier in his opinion the ALJ also notes that Plaintiff "reported headaches three to four times a day but acknowledged he has not seen a headache specialist. He also reported fatigue but acknowledged he has received no treatment for it." [R 96.]

5

was a medium level at worst. [*Id.*] The ALJ gave Dr. DePhillips's opinion some weight insofar as his February 2013 limitation to light work was consistent with the ALJ's assessed residual functional capacity. [*Id.*]

At step four, the ALJ found that Plaintiff was unable to perform his past relevant work, which was all performed at a medium exertional level. [*Id.*] Finally, at step five, the ALJ found there were jobs that existed in significant numbers in the national economy Plaintiff could perform. [R 100.] Specifically, the ALJ relied upon testimony from the vocational expert in concluding that Plaintiff could perform the unskilled light exertional jobs of office helper; mail clerk; and small product assembler. [*Id.*] Because of this determination, the ALJ found Plaintiff not disabled under the Act. [R 101.]

    c.   **Issues Before the Court**

On October 16, 2015, the Appeals Council denied Plaintiff's request for review [R 1-6], making the ALJ's decision the final decision of the Commissioner. Plaintiff now seeks judicial review, alleging that: 1) the ALJ did not properly evaluate the opinion of treating neurosurgeon Dr. DePhillips;[5] 2) the ALJ's credibility determination was patently wrong; and 3) the Appeals Council erred in denying Plaintiff's request for review based on materials submitted after the administrative hearing. [Dkt. 17.] Contained within Plaintiff's first argument concerning the ALJ's evaluation of Dr. DePhillips's opinions is also an issue concerning the accuracy of the ALJ's factual findings.

**II.   Social Security Regulations and Standard of Review**

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. ALJs are required to follow a sequential five-step test to assess whether a claimant is legally disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment;

---

[5] Plaintiff's Memorandum in Support of Summary Judgment lists Dr. DePhillips as an orthopedist [*see, e.g.*, dkt. 17, p. 7], but his reply lists Dr. DePhillips as a neurosurgeon per the doctor's biography on the Franciscan Health Website [*see* dkt. 26, p. 4; *see also* https://www.franciscanhealth.org/find-a-doctor/physician/george-dephillips-1841344215 (last visited May 26, 2017)].

6

and (3) whether the severe impairment meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-related activities. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920(a)(4)(i)-(v). If the impairment(s) does meet or equal this standard, the inquiry is over and the claimant is disabled. 20 C.F.R. § 416.920(a)(4). If not, the evaluation continues and the ALJ must determine (4) whether the claimant is capable of performing his past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must (5) consider the claimant's age, education, and prior work experience and evaluate whether she is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id.* At the fourth and fifth steps of the inquiry, the ALJ is required to evaluate the claimant's RFC in calculating which work-related activities she is capable of performing given his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show that there are jobs that the claimant is able to perform, in which case a finding of not disabled is due. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). While reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young v. Barnhart*, 362 F.3d at 1001. Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted). The Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate

discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535,539 (7th Cir. 2003); *see also*, 42 U.S.C.§ 405(g).

**III. Discussion**

    **a. The ALJ Failed to Build an Accurate and Logical Bridge Between the Evidence and His Conclusions**

        **i. The ALJ Misrepresented the Treating Physician's Opinions**

Plaintiff has raised the issue of the accuracy of the ALJ's factual findings. It is well-established that an ALJ must "build an *accurate* and logical bridge" between the evidence and his conclusion. *Steele*, 290 F.3d at 941 (emphasis added) (internal citation omitted). Thus, "[i]f the factual basis for the opinion is not an accurate representation of the record, the opinion cannot be sustained." *Embry v. Barnhart*, 2003 WL 21704425, at *7 (N.D. Ill. July 18, 2003) (relying, in part, on *Steele*).

The ALJ represents Dr. DePhillips findings as follows: "I give Dr. DePhillips's opinion some weight insofar as [Dr. DePhillips's] February 2013 *limitation to light work* is consistent with the [ALJ's] assessed residual functional capacity." [R 99 (emphasis added).] In reality, however, Dr. DePhillips never actually limited Plaintiff to light work. In his February 26, 2013 treatment note, Dr. DePhillips details his projected treatment plan for Plaintiff as follows:

> we will *most likely* release him to return to work with restrictions at a light physical demand level…I am not comfortable that the fusion has completely solidified…[t]he *plan* is to release him to work after 4 weeks [of PT and with a new back brace] and of course he will not be able to function at greater than a light physical demand level for work until there is complete bridging trabecular bone union at the L5-S1 level. He will remain off work until his next appointment.

[R 400 (emphasis added).] This note does not release Plaintiff to light work; this note explicitly keeps him off work until the next office visit. [*Id.*][6] Dr. DePhillips's February 26, 2013 plan did not come to fruition, though, because the next treatment note from Dr. DePhillips on March 20, 2013 states that Plaintiff "has reached maximum medical improvement from a surgical standpoint." [R 397.] Dr.

---

[6] Dr. DePhillips does not even release Plaintiff for sedentary work as he had done in March of 2012. [R 396; *see also* R 97 where the ALJ makes note of this fact.]

8

DePhillips concludes he can do nothing further for Plaintiff surgically and then refers Plaintiff to a pain management specialist and classifies Plaintiff as "permanently and totally disabled." [*Id.*][7, 8]

The ALJ's misrepresentation regarding light work is, in the eyes of the Court, material. It does not appear a reasonable mind would accept the ALJ's interpretation of Dr. DePhillips's February 26, 2013 note as limiting Plaintiff to light work when the note is read in its entirety, particularly in conjunction with the treatment note that follows it. *See Richardson*, 402 U.S. at 401; *Zurawski*, 245 F.3d at 887. While the Commissioner's brief does more accurately acknowledge the aspirational nature of Dr. DePhillips's February 2013 treatment note (*see* dkt. 25, pp. 4-5), the ALJ selectively interpreted the note as Dr. DePhillips actually limiting Plaintiff to light work. Thus, the factual basis behind how the ALJ treats one of Dr. DePhillips's key opinions is not an accurate representation of the record, and the ALJ's opinion cannot be sustained based on this misrepresentation. *See Embry*, 2003 WL 21704425, at *7; *Steele*, 290 F.3d at 941. On remand, the ALJ should correct this misrepresentation and address whether this changes the weight the ALJ affords the medical opinions of treating neurosurgeon Dr. DePhillips, and discuss whether and why/why not the opinions of Dr. DePhillips are given controlling weight in light of the factual correction.

### ii. The ALJ Made an Impermissible Leap of Logic with Respect to Plaintiff Being Weaned off Narcotic Medications

With regards to logic, it is also troubling that the ALJ represents "the fact that the claimant was

---

[7] The Commissioner of the Social Security Administration is responsible for determining whether a claimant meets the statutory definition of disability; a statement by a medical source that a claimant is "disabled" or "unable to work" does not automatically entitle a claimant to a finding of disability. 20 C.F.R. § 404.1527(d)(1); *see also Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) and *Collins v. Astrue*, 324 F. App'x 516, 520 (7th Cir. 2009) (referencing *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999)). Plaintiff is not entitled to have Dr. DePhillips's opinion on the ultimate question of disability be treated as controlling, but Plaintiff is entitled to be told why the ALJ has decided to disagree with Dr. DePhillips (via the 6 factors statutorily delineated by 20 C.F.R. § 404.1527(c) for use when any medical opinion is not given controlling weight). *Snell*, 177 F.3d at 134; *Collins*, 324 F. App'x at 520.

[8] It is also worrisome the ALJ uses language that surpasses the characterizations of Dr. DePhillips's March 20, 2013 note in one other respect. The ALJ states that the March 20, 2013 record notes that Plaintiff's "back pain had improved considerably" since his surgery, whereas the actual record only states that his "back pain has improved." [*Compare* R 97 *with* R 297.] This characterization strikes the Court as a somewhat skewed misrepresentation, as the other two sentences of the same paragraph refer Plaintiff to a pain management specialist and express the opinion that Plaintiff is permanently and totally disabled.

9

weaned off narcotic medications suggests that his pain was becoming more tolerable." [R 98.] A plain reading of the records suggests this is a far-from-logical leap the ALJ has made concerning Plaintiff's pain levels and the subsequent inferences the ALJ made therefrom. Although the Commissioner is correct that there are indeed a few references in the record concerning the reduction of Plaintiff's narcotic pain medications, it does not appear that these reductions are *prompted* by Plaintiff's pain levels having lessened. [R 381, 382, 384, 453.][9] Moreover, the note discussing fully weaning Plaintiff off narcotics, when read in its entirety, stands in direct opposition to the ALJ's impermissible leap of logic that Plaintiff's pain was becoming more tolerable. In full, the history of present illness ("HPI") section of Dr. Patel's June 18, 2013 note reads:

> He is here for follow up. He has been to Dr. DePhillips since last visit and was given a topical medication. He has been placed on permanent disability and Dr. DePhillips will be leaving town and has referred Dustin to Dr. Malek. Dustin does not want to proceed with surgery. At this point, he has stopped PT, been dealing with the pain with medications. He is taking gabapentin, percocet, robaxin, and topical medications, and tramidol. At this point, I would like to wean him off percocet since he will be placed on permanent disability. He will try to wean this month on the percocet and we will continue with the other non-narcotics.

[R 457.] Not only does this note explicitly list the multiple other non-narcotic pain medications Plaintiff was taking for his pain (and will continue with), but the note states that Dr. Patel "would like to wean [Plaintiff] off percocet *since* he will be placed on permanent disability." [*Id.* (emphasis added).] In other words, Dr. Patel had planned to wean Plaintiff off percocet *because* Plaintiff will be placed on permanent disability; there is simply no suggestion the weaning was because his pain was becoming more tolerable.

"Although the ALJ need not discuss every piece of evidence in the record, he must confront the

---

[9] While there is a February 25, 2013 record [R 451] referencing that Plaintiff was down to 4 Percocet a day, and that Dr. Patel "will keep [Plaintiff] at 4 percocet a day and have him continue to wean as tolerated", this appears to be aspirational rather than a cause-and-effect weaning. A note from the very next day does have Plaintiff relating this weaning information to Dr. DePhillips as follows: Plaintiff "states that his lower back pain has improved to a 6 on a scale of 1-10 and he has been weaning the use of narcotic pain medications." [R 400.] However, Dr. DePhillips note may not convey a cause-and-effect statement either. There is somewhat of an endogeneity problem here: the ALJ has confused cause and effect, is unclear about causation and correlation. Even if these two notes are taken as a cause-and-effect notation, these references do not outweigh the other treatment notes on this subject (R 381, 382, 384, 453), nor the final note concerning weaning Plaintiff off narcotics (R 457).

10

evidence that does not support his conclusion and explain why it was rejected." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). The full text of this June 18, 2013 treatment note does not support the ALJ's conclusions, yet the ALJ does not adequately address the fact that Dr. Patel connects the weaning of narcotics medications with Plaintiff being placed on permanent disability, nor does the ALJ address the multiple non-narcotic pain medications Plaintiff is to continue taking. The ALJ does not explain why this evidence was rejected in forming his conclusion that Plaintiff's narcotic weaning "suggests that his pain was becoming more tolerable." The Court does believe a reasonable person would find this omission adequate evidence to support the ALJ's conclusion. *Richardson*, 402 U.S. at 401; *Zurawski*, 245 F.3d at 887. Thus, at least in part, the ALJ's decision is not based upon substantial evidence and cannot stand. *Scheck*, 357 F.3d at 699.

**IV. Conclusion**

The Court must reverse and remand this decision because the ALJ failed to build an accurate and logical bridge between the evidence and his conclusions as required by law. We reverse and remand with instructions for the ALJ to conduct a reevaluation of Dr. DePhillips's and Dr. Patel's medical opinions and the weight given to them once the misrepresentations are corrected and/or appropriately addressed. At this time, the Court offers no opinion as to the other alleged bases of error in the ALJ's opinion or the Appeals Council's decision as raised by the Plaintiff in Docket No. 17.

Plaintiff's Motion for Summary Judgment [dkt. 16] is granted. The Commissioner's Motion for Summary Judgment [dkt. 24] is denied.

Entered: 6/19/2017

U.S. Magistrate Judge, Susan E. Cox

11